Welcome to the Ninth Circuit. We're glad to have you here. The first case, Healy v. Electronic Data System and a Consolidated Appeal, that case is submitted on the briefs. The first case for argument this morning is United States v. Mejia-Cortez. And when you're ready, counsel. May it please the Court. I'd like to reserve one minute of my time for rebuttal, if I may. Okay. Please try to keep track, and we'll do our best to help you. Thank you. Jason Carr, appearing on behalf of Appellant Jonathan Mejia-Cortez. It's worthwhile for a moment to think about why we allow collateral challenges in the legal reentry prosecutions. One of the fundamental underlying policy bases for allowing these collateral challenges is the recognition that, in some instances but for this defective hearing, there wouldn't have been this tragic chain of events that led to the prosecution of the nonresident. Mr. Carr, could you – I'm having a difficult time procedurally with the posture of this case. As I understand it, we are here on an appeal from the denial of a motion to withdraw a guilty plea. Correct. Ordinarily, we hear these collateral attacks from an appeal of a denial of a motion to dismiss the indictment. Does it make a difference? I would submit it doesn't, Your Honor. Normally, the correct procedure is to file a pretrial motion to dismiss. In this case, what the attorney said is they missed the collateral challenge after the guilty plea was entered. They filed a motion to withdraw the plea. What I would submit to this Court is the analysis – is that the analysis there is does he have a fair and just reason to withdraw the plea? And the fair and just reason would be ineffective assistance of counsel by allowing him to enter the trial? No, no, Your Honor. My – my contention would be that if he had a valid removal challenge that, you know, that would survive, that would potentially be grounds for him to not – to get the indictment dismissed, if that situation exists, then he does, in fact, have a fair and just reason to withdraw his plea. Because his lawyer failed to file the proper motion to dismiss the indictment. Well, it's a – it's really just a timing issue, Your Honor. Sure, Mr. Carr. That's why I say I'm having a problem with the procedural posture here. Because you do agree that – that we review the denial of the withdrawal of the guilty plea on an abuse of discretion standard. Correct. So the question we have to ask is whether or not the district court properly determined that there was no fair and just reason to withdraw the plea. And the reason was because my lawyer should not have allowed me to enter this plea in the first place because I had a viable challenge to an element of the indictment that he never filed. Or she. Or she. That sounds to me like an ineffective assistance of counsel claim. And why shouldn't we simply say raise that in a collateral habeas petition as opposed to bringing it before us on direct review? Well, if you do that, Your Honor, you're going to have this added layer of analysis, which is a strict and ineffective assistance of counsel issue. Now, here the attorney did make a mistake by not bringing the motion at an earlier time. But the – all the operative facts and law were brought to the district court and gave the district court an opportunity to cogitate and analyze this issue. Well, but that's not – Basically, without any prejudice to either the court or the government. But that's not – that's not true, that all the issues were brought to the attention of the district court. And I think this may be part of your argument that not all the issues were brought to the attention of the district court. That is to say, at the time of the hearing in front of the IJ, he was only 17 years old. The district judge had it in front of him in the sense that he could have added up the dates. But the lawyers, including your predecessor representing him, didn't say a word about it. It's a good point, Your Honor. You'll notice if you look at my opening brief, I raise one issue. And I say that the courts have allowed him to withdraw his plea because there's this due process defect in the removal proceeding that prejudiced Mr. Mejia-Cortez. At the trial court, they said the due process defect was a failure of the immigration judge. The fall regulations would say that you have to tell the alien any potential grounds for removal. On appeal, I say, yes, we have that defect. We also have this other whole area of defects, which is he wasn't afforded the protections he needed. And I say that the courts have allowed him to withdraw his plea because there's this due process defect in the removal proceeding that prejudiced Mr. Mejia-Cortez. And I say that the courts have allowed him to withdraw his plea because there's this other whole area of defects, which is he wasn't afforded the protections he needed. The two reasons why there's a due process defect. The first is that the judge didn't tell him about the due process defect. And the second is that the court didn't tell him about the due process defect.  So we're at a stage until we get past whether or not he had a – whether there was an abuse of discretion in denying the motion to withdraw the guilty plea. And I'm still having problems looking beyond the procedural posture that we're in in order to get where you want us to. But you have to – I guess you'd have to look at this partly from a practical standpoint. At the trial – at a trial level proceeding, the attorney realizes he made a mistake, but it's prior to sentencing. There's time to fix it. So they file this motion to withdraw the plea. Now, this Court does have – we review the district court's decision from an abuse of discretion standard. But if you look at abuse of discretion law, one universal trend or one common thread there is that if the judge made a legal error, he per se abuses discretion. It's not the judge's error. It's counsel's error. And why is it an abuse of discretion for the district court to say, well, counsel, you might have had a legitimate motion had you properly brought one to challenge the indictment in this case, but you didn't. Therefore, you've waived that challenge, and you've not given me a good enough reason to withdraw the guilty plea. Well, I would ask this Court to look at this, once again, from a practical standpoint. A, if you have a trial attorney who's in this position where they realize they should have raised an issue prior to plea, what would you have them do? I mean, certainly it's more efficient to do what they did in this case, right, than to allow a whole other host of post-conviction litigation to arise. So what happened here was the most efficient way to fix what was an earlier failing. So is your argument really that we should ignore the normal rule that says we don't look at ineffective assistance of counsel issues on direct review because the record is developed enough that we can, as a practical matter, decide it on this record? Right. And as just a matter of efficiency in the judicial economy here. I don't understand that answer. How did ineffective assistance of counsel get in front of us today? I thought we were reviewing for abuse of discretion. The district judge's refusal to allow the plea to be withdrawn. That's exactly right. And none of this was analyzed in terms of ineffective assistance of counsel. I believe Judge Tallman's concern, though, is that we do have that thread of that underlying this whole case. Well, I understand. That may have been. She can't raise this motion when she should have. But my contention is that there's really no prejudice, and this is the most efficient way to handle this kind of situation. The district court had the end of it. This was a fully briefed issue. The district court had an opportunity to look at the issue, and he did, in fact, give a very reasoned ruling on it. The government had an opportunity to come in and file their objections. And if you look at what should a trial attorney do in this position, I would submit that this court should have a rule for what they did here was the best way to handle the situation rather than giving rise to a whole host of post-conviction litigation, which is much more complicated and, indeed, inefficient to the court system. Now, I would like to segue into the merits of this very briefly. What we need to look at in these removal challenges is it's really almost a temporal issue. You have to go back to the removal hearing and say, if everything had gone the way it's supposed to, if this immigration judge had followed regulations, if the immigration judge had informed Mr. Mejia-Cortez, as he should have, is there any chance that this proceeding would have come out differently? And I say, indeed, that there would have been a chance, because if the immigration judge had done what he was supposed to, Mejia-Cortez would have had a guardian. They would have said, look, Judge, we have a 212-H issue here. We need to have a hearing. At this hearing, the family, his whole nuclear family most likely would have showed up. His public defender would have showed up, who wrote a letter for sentencing here, talking about his prior conviction and the extenuating circumstances of that and how everybody came together to try to come up with a resolution of that case that would allow Mejia to reform his life. And let's not forget, this is a very, very young man. And that's what we should do. Convicted of a very, very serious offense, voluntary manslaughter as a result of gang activity. It was, Your Honor. But if you look at the letters that were submitted as an exhibit at sentencing, what they say is that there was a strong, strong case for exculpatory justification in that case, that it really was a self-defense case. But what the parties did was they came together and came up with this plea agreement to allow Mr. Mejia to be on probation, because he is a young man, and he's a young man capable of redemption. And this is what makes this case different than Mural and Clong. But it's still discretionary, is it not? The Attorney General has under 212H the discretion to deny the waiver. And one of the factors that the AG looks at is the seriousness of the aggravated felony. And it doesn't get much more serious than a murder. Well, first of all, it's probably not an aggravated felony. It wasn't charged in the notice to appear in this case as an aggravated felony. It was charged as a crime of moral turpitude. And I would submit that if you look at this record, that this he incurred this conviction when he was 15. If you look at the facts, if you look at the letter and what the public defender said, there are strong extenuating circumstances here. And I think you're right on the right track there, Judge Talmadge. You need to look at this immigration judge. He's the one who's going to make the decision. He's the one who has the discretion. And if everybody came together and put together a full hearing for this judge and said, look, this is a young man. We believe he's capable of redemption. He has this young kid. Mr. Mejia-Cortez says that when this child was born, I made a change in my life. And what better chance, what better occasion to change your life than the birth of a young son? And that all this evidence would have been before the IJ, and that he could have said, and it would have been consistent with this Court's precedent, which said that one U.S. citizen child alone is enough to show extreme hardship, permanent separation therefrom, that the immigration judge said, we're going to take a chance on this kid. I'm going to let him stay here and be a father to this child, and we're going to keep him on a short leash. I think that's fine. Your time has run. We'll give you a minute on rebuttal in any event. Sure. Thank you. Good morning. May it please the Court. I'm Robert Bork with the United States Attorney's Office in the District of Nevada. I think the heart of the matter is, what is the state of the record in this case? And I think the record, it was sufficient for the district court judge to make a determination and, for that matter, for this Court, if it necessary, as the Court did in Murrow and Kline, make a determination that there was no prejudice to this defendant because of this failure to bring this issue to the immigration court's attention. Let me ask you a different question, though, just as a starting point. As I read your brief, on the issue as to what the consequence is of his having been 17 and not having had his procedural rights because he was 17 in front of the IJ, you've agreed that we should remand on that issue? I think clearly there appears to be a failure in the immigration system to afford this juvenile the rights that appear to be present. So I have to correctly concede that it should be remanded for that. And so remanded for that means remanded to the district judge so the district judge can go at the issue of whether or not to allow him to withdraw the plea knowing that there is that problem in the record. When you say remanded. The procedure that brought this case to you now would be done. That is, the public defender would file a motion. I would respond. The court would make findings. Motion to withdraw the plea. That's correct, Your Honor. You think we should redo that motion to withdraw the plea based upon the fact that the district judge did not know that he was 17 or did not have it in his head, although he had it in his papers. Okay. That's correct, Your Honor. We remanded on an open remand so that the court could also consider the 212H issue as well? Well, again, my position is that's not necessary in offense. That's not the position you took in your brief. As I understand your brief, you said we should rule that he was foreclosed on the 212H waiver issue because the record was adequate to support the district judge's decision, but that we should nonetheless remand on the due process. Are you now changing your position? No. And if I wasn't clear, I apologize. What I meant was on the issue of the brief. You were very clear on the brief. I guess I want to know what your position is now. What I meant by open record is the record on allowing both parties to introduce evidence about the fact the defendant was a juvenile during the time of the immigration   But that's not my question. My question is are you agreeing to an open remand which would allow the Petitioner also to re-raise the 212H issue? That wasn't my intent of the brief, so I apologize. My intent was why I said open record is so the court can consider new facts and evidence based upon this juvenile allegation. Okay. Only as to the due process issue because he was a juvenile. Okay. That's correct. Good. And I'm sure when you say due process, both these I understood are due process   Okay.  Now we're getting somewhere. So the question is 212H. Let me ask you the following. The premise I have of the question is that it's an abuse of discretion if the district judge misunderstands the legal standard. That's correct. As I read the record, the district judge misunderstood the standard under 212H. That is to say the district judge, I can't quite tell, but it appears to me from the and our moral incline decision, and it appears to me that he flat misread them. That is to say, I'm reading from page 98 of the excerpts of record, page 13 of the transcript. Are you with me? Fine. Okay. Thank you. The court, sure, thank you. Then he says, well, what we're faced with is two possible views. The Arietta court, the earlier court, said that the defendant need only show that he had plausible ground for relief and deportation. Whereas the moral incline court said, in effect, no, you must show more than that. You must as well show that you could make the case with respect to 212H. That's not what moral incline held at all. Moral incline did not overrule, in fact, could not overrule Arietta. In both cases, the standard is was there a plausible case that he could have done more than that. So as I view it, and then the district judge follows what he reads moral incline to say. I mean, I think he mistook the legal standard. Well, I don't Can you talk me out of that point of view? Moral incline clearly reiterates the standard that a plausible ground is what's necessary to possibly remand a 1326 prosecution when it's challenged to the deportation. But I think that moral incline, and that some of these other cases have Arietta have also, the Ninth Circuit itself, looked at the facts presented below, as the district court judge did. And the standard there clearly is that the hardship must be an extreme hardship, a great actual or prospective injury of extreme impact on the citizen family. No, I understand that. I want to make it very clear as to where I think the district judge misread Arietta and moral incline. Arietta says the standard is plausible. As I read the district court statement here, he doesn't say the standard is plausible under moral incline. He says you actually have to show, not just a plausible case, but you have to show the case. In other words, he upped the standard. But I think it was based upon a misreading of moral incline, but moral incline I think still allows him to make the decision he made, even if it's for the wrong reason, because Oh, you see, that may well be true. But I think that he made a mistake of law in reading moral incline that way. If he were to read moral incline properly and were to say the issue is whether or not there's a plausible case, and were he nonetheless to come out the same way he did then, I might have quite a different answer, because then I'm reviewing for discretion his application of this proper rule to the facts. But my problem is at the threshold, I don't think he applied the proper rule. I appreciate that. I guess my argument would be is this Court itself can examine the record and find, I think, that on this issue the district court possibly applied the wrong legal standard, but under the holding in moral incline, which does talk about the necessity of this extreme hardship, finding that on the record in this case there was no extreme hardship presented. And clearly the defense in their motion could have presented any and all evidence, and all they presented was the letter from the mother of the defendant's child merely saying that now she had to pay all the bills. And he didn't come over. For you to be right that we can ourselves hold that the district judge was right, I think you have to say that it would have been an abuse of discretion by the district judge applying the proper standard to have held that the 212H waiver was plausible. That is to say, on these facts you say it's impossible for the district judge to have come to any other conclusion. That's your – that has to be your argument. I wouldn't necessarily use the word impossible, but I would use the word reasonable. I think it was reasonable for the court on these facts to make the decision he made. But for us to say it's an abuse of discretion without knowing what the district judge would have done on the application of the proper standard, for us to say on our own motion without remanding is to say that you could not reasonably have gone the other way. It would have been an abuse of discretion, and as a matter of law on these facts, the district judge couldn't have done that. Isn't that right? Is that it, or does it have to be a compelled conclusion? My opinion would be is the Court's decision was still based upon the facts presented. I mean, if there had been no facts presented at all, I'm sure the judge would have said – or sufficient facts to show that there was a more plausible ground as presented in the other cases, Arrieta and Arce-Hernandez, I think we would have had a different decision. I'll admit that the Court's comments appear to say that he's hand-tied, but he's clearly looking at the facts of the case. And the same facts that are before you now were also enhanced by the information from the pre-sentence report, again, which clearly show that this defendant at the time, and things theoretically should be stronger now because he has the child, et cetera, older, that the defendant did not have the proper extreme hardship showing that would be necessary even at the time of the removal hearing. And so I'll admit that the decision is muddled in terms of the legal decision, but it was still based on the same facts that this Court can look at, that the Murrow Incline Court looked at in deciding that, in this case, there was no abuse of discretion and denial of the motion we draw. Thank you. Thank you very much. I won't say that you saved a minute, but we've saved a minute for you. Thank you. The one – I want to take a moment to discuss the fact – well, I do appreciate the government's concession that there should be a remand, but it's a little curious because the prejudice analysis is going to be the exact same. The juvenile status is another due process defect that tainted this proceeding, the removal proceeding. But when I – we still have to get back to prejudice. The prejudice here is the 212H analysis. But even if you look at the facts in Murrow Incline, what do you have here that's any different from the normal prejudice that flows from the separation of the alien from immediate members of his family? And that's the crux of this case. It's my case closer to Arrieta or Murrow Incline, which is really fundamentally what this case is about. And I would submit there's a fundamental difference here, and that is in the nature of the defendant. In Murrow Incline, you had a hardened criminal who was 39 years old at his removal, who was a criminal history category 6. He'd been in prison 10 of the past 13 years. The immigration judge, had he done a 212H hearing in this case like he should have, he would have presented with a 17-year-old child who is – who had a credible argument that he was making great roads in changing his life and that he could have been a good father to this U.S. citizen child. In Murrow Incline, the judge – it wouldn't have been anywhere near as reasonable for the judge to make that determination. The judge could have said, look, your kids are probably better off without having this hardened criminal around. And what this court said in Salcido Salcido is the immigration judge is supposed to give predominant weight to what's going to be the effect on the child. An immigration judge in this case, in my case, could have said, this child may be benefited by having this parent around. He might have a better life. This might be a better U.S. citizen life for this child if this kid, in fact, turns his life around. And the judge would have had incredible evidence that he, in fact, would do that. Thank you. Thank you very much. Thank you both sides for your arguments. It was very helpful. The case of United States v. Mejia Cortez is now submitted.
judges: Canby, W. Fletcher, Tallman